United States District Court
Southern District of Texas
**ENTERED**
January 30, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RODNEY TOW, TRUSTEE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-14-3103 |
| § | |
| WELLINGTON YU, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 67). The court has considered the motion, Plaintiff's response, Defendant's reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED IN PART** and **DENIED IN PART**.

### I. Case Background

Plaintiff brings claims against Defendant under 11 U.S.C. §§ 542, 549 and for breach of fiduciary duty.

**A. Factual Background**

Nikko Development Group, LLC ("Nikko Development"), a company controlled by Anthony Nikko, M.D. ("Dr. Nikko"), owned two tracts of land (the "Property") in Harris County, Texas.[2] In April 2005,

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 16, Ord. Dated Dec. 5, 2014.

[2] See Doc. 71-4, Ex. 4 to Pl.'s Resp., General Warranty Deed pp. 1-7; Doc. 71-5, Ex. 5 to Pl.'s Response, Purchaser's Statement pp. 1-2.

Defendant and Dr. Nikko entered into an agreement where Defendant's corporation, the Peterson Group, Inc. ("PGI") purchased the Property from Nikko Development for $1,600,000.[3] PGI provided the initial down payment and closing costs.[4] Although this was recorded as a sale, based on a side agreement between the parties, Nikko Development repaid PGI's down payment after closing and also agreed to pay the expenses on the property.[5] After Dr. Nikko failed to pay the expenses due to financial difficulties, PGI paid the expenses for the upkeep of the Property from 2005 to 2009, including property taxes, closing costs, and loan payments.[6]

Because the associated expenses with the Property were burdensome to Defendant, Defendant, with Dr. Nikko's consent, decided to sell the Property on February 26, 2009, to 7677 Apartments, LLC ("7677 Apartments") for $2,150,000.00.[7] 7677 Apartments assumed the previous loan and financed the rest through a Wraparound Promissory Note (the "Wraparound Note") in the amount of $2,050,000.00.[8]

---

[3]   See Doc. 71-4, Ex. 4 to Pl.'s Resp., General Warranty Deed pp. 1-7; Doc. 71-5, Ex. 5 to Pl.'s Resp., Purchaser's Statement pp. 1-2.

[4]   See Doc. 71-2, Ex. 2 to Pl.'s Resp., Dep. of Def. pp. 16-17.

[5]   See id.

[6]   See id. pp. 22-23; Doc. 67-1, Ex. 1 to Def.'s Mot. for Summ. J., 2005 Statement of Understanding p. 1; Doc. 71-6, Ex. 6 to Pl.'s Resp., Major Expenses PGI paid on behalf of Dr. Nikko p. 1.

[7]   See Doc. 71-2, Ex. 2 to Pl.'s Resp., Dep. of Def. pp. 22-23; Doc. 67-2, Ex. 2 to Def.'s Mot. for Summ. J., 2009 Statement of Understanding p. 1.

[8]   See Doc. 71-9, Ex. 9 to Pl.'s Resp., Wraparound Note pp. 1-10.

Defendant also entered into a consulting agreement with 7677 Real Street, an affiliate of 7677 Apartments, to assist in the development of an apartment complex on the Property.[9] Under this agreement, in exchange for Defendant's consulting services, 7677 Real Street agreed to transfer three properties, valued at $1,050,000.00, to Defendant, but only one of these properties was actually transferred.[10]

On January 8, 2010, 7677 Apartments executed another promissory note (the "Note") in the amount of $1,000,000.00 to replace the earlier Wraparound Note.[11] In exchange, PGI was given a security interest in the property, as evidenced by the Second Lien Deed of Trust(the "Deed of Trust").[12]

Nikko Development filed a lawsuit against Defendant, PGI, and 7677 Apartments on September 3, 2010, in the 152nd District Court of Harris County, Texas.[13] In Nikko Development's amended petition, it alleges that Dr. Nikko had no knowledge of the consulting agreement between Defendant and 7677 Apartments at the time of the sale of the Property, and that Dr. Nikko did not receive any of the proceeds

---

[9] See Doc. 71-2, Ex. 2 to Pl.'s Resp., Dep. of Def. pp. 58-60; Doc. 71-12, Ex. 12 to Pl.'s Resp., Consulting Agreement pp. 1-6.

[10] See Doc. 71-2, Ex. 2 to Pl.'s Resp., Dep. of Def. pp. 58-60; Doc. 71-12, Ex. 12 to Pl.'s Resp., Consulting Agreement p. 2.

[11] See Doc. 71-10, Ex. 10 to Pl.'s Resp., Note pp. 1-6.

[12] See Doc. 71-11, Ex. 11 to Pl.'s Resp., Deed of Trust pp. 1-9.

[13] See Doc. 71-1, Ex. 1 to Pl.'s Resp., Nikko Development's Original Pet., Request for Decl. Relief & Request for Disclosures p. 1.

from the sale of the Property to 7677 Apartments.[14] The parties subsequently brought counterclaims and crossclaims against one another.[15] The parties attempted to reach a settlement, spurred by knowledge that the Property would be foreclosed on June 7, 2011.[16] 7677 Apartments filed for Chapter 11 bankruptcy on June 7, 2011, which stayed the lawsuit and prevented foreclosure of the Property.[17]

The parties continued settlement discussions throughout 2011, finally reaching an agreement in December 2011.[18] The parties agreed that the Property would be sold for at least $2,000,000, and the proceeds would be first utilized to pay off the Note, and with the remaining proceeds divided among the parties as follows: fifty percent to Dr. Nikko, forty percent to 7677 Apartments, and ten percent to Defendant.[19] The parties additionally agreed to release

---

[14] See Doc. 71-41, Ex. 41 to Pl.'s Resp., Nikko Development's First Am. Pet. & Request for Declaratory Relief pp. 4-7.

[15] See Doc. 67-5, Ex. 5 to Def.'s Mot. for Summ. J., 7677 Apartments' 1st Am. Ans. pp. 1-7; See Doc. 67-7A, Ex. 7A to Def.'s Mot. for Summ. J., 1st Am. Ans. of Def. & PGI pp. 1-6; See Doc. 67-7B, Ex. 7B to Def.'s Mot. for Summ. J., Def. & PGI's 3rd Party Claims against Dr. Nikko pp. 1-7.

[16] See Doc. 71-22, Ex. 22 to Pl.'s Resp., Emails Between Def.'s Counsel & Dr. Nikko's Counsel May 2011 p. 1.

[17] See Doc. 71-17, Ex. 17 to Def.'s Mot. for Summ. J., 7677's Bankruptcy Pet. pp. 1-7; Doc. 71-19, Ex. 19 to Def.'s Mot. for Summ. J., Notice of 7677 Apartments' Bankruptcy p. 1.

[18] See Doc. 71-24, Ex. 24 to Pl.'s Resp., Emails from July 2011 pp. 1-6; Doc. 71-25, Ex. 25 to Pl.'s Resp., Emails & Proposed Settlement Agreement from August 2011, pp. 1-14.

[19] See Doc. 67-9, Ex. 9 to Def.'s Mot. for Summ. J., Settlement Agreement p. 3.

each other from all the claims in the lawsuit.[20] PGI endorsed and delivered the Note and assigned the Note and the Deed of Trust to Dr. Nikko in December 2011.[21] The Property was sold in April 2012, and $69,977.11 was paid to Defendant per the settlement agreement.[22]

Relevant to the present motion, PGI began to have serious financial issues as early as 2010.[23] PGI filed for bankruptcy under Chapter 7 on March 2, 2012, declaring $12,192,644.87 in pending debts.[24]

## B. Procedural Background

This case originated as an adversary claim, brought by Plaintiff Trustee against Defendant and Defendant's attorneys in PGI's bankruptcy proceeding, and was later transferred this court.[25] The parties successfully mediated the case in 2015, but the settlement was approved by the bankruptcy court only with regards to Defendant's attorneys after Defendant would not testify about his

---

[20] See id. pp. 4-7.

[21] See id. p. 1; Doc. 72-3, Ex. 16 to Def.'s Reply, Transfer of Note and Lien pp. 1-8

[22] See Doc. 67-10, Ex. 10 to Def.'s Mot. for Summ. J., Disbursement Statement p. 1.

[23] See Doc. 71-2, Ex. 2 to Pl.'s Resp., Dep. of Def. p. 76 ("I had to loan [PGI] money all the time to make up for all the negative cash flow . . . There was some rent money, but it was a negative situation."); Doc. 71-34, Ex. 34 to Pl.'s Resp., List of Def.'s Assets pp. 1-5; Doc. 71-37, Ex. 37 to Pl.'s Resp., October 2011 Deposition Emails p. 1 ("That's all Mr. Yu has been able to locate. [PGI] has been defunct since September 2010.").

[24] See Doc. 71-38, Ex. 38 to Pl.'s Resp., Claims Register p. 5.

[25] See Doc. 1, R. & R. Recommending the Withdrawal of the Reference of this Adversary Proceeding; Doc. 2, Am. R. & R. Recommending the Withdrawal of the Reference; Doc. 9, Ord. Granting Mot. to Withdraw Reference.


financial status.[26]   Thus, only the claims against Defendant remain.[27]

Plaintiff obtained leave from the court to file an amended complaint against Defendant, and Defendant filed an answer.[28] Defendant subsequently filed the pending motion for summary judgment, to which Plaintiff responded, and Defendant replied.[29]

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v.

---

[26]   See Doc. 49, Status Report pp. 1-3.

[27]   See Doc. 56, Ord. Dated Mar. 9, 2016; Doc. 57, Ord. Dated Mar. 9, 2016; Doc. 59, Pl.'s 1st Am. Pet.

[28]   See Doc. 59, Pl.'s 1st Am. Pet.; Doc. 62, Ord. Dated Apr. 1, 2016.

[29]   See Doc. 67, Def.'s Mot. for Summ. J.; Doc. 71, Pl.'s Resp.; Doc. 72, Def.'s Reply.

Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some

metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

### III. Analysis

**A.  <u>Net Proceeds</u>**

Defendant argues that summary judgment should be granted on Plaintiff's claims under 11 U.S.C. § 542 and 549 because the net proceeds Defendant received from the sale of the Property were not part of the bankruptcy estate.

11 U.S.C. § 542(a) allows a trustee to compel the turnover of property that is considered property of the bankruptcy estate under 11 U.S.C. § 541. A trustee has the burden of proving that property is the property of the estate under 11 U.S.C. § 541. <u>See</u> <u>In re Heritage Org., LLC</u>, 350 B.R. 733, 738 (N.D. Tex. 2006). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.

§ 541(a)(1).  Under 11 U.S.C. § 549, "the trustee may avoid a transfer of the property of the estate–(1) that occurs after the commencement of the case . . . and (B) that is not authorized under this title or by the court."

In his motion for summary judgment, Defendant argues that PGI did not have any right to the proceeds received by Defendant under the settlement agreement.  Plaintiff contends that there is a fact issue whether PGI retained an interest in the Note and Deed of Trust on the date it filed for bankruptcy, contending that the settlement agreement was not effective and the Property was not transferred until after PGI filed for bankruptcy, pointing to the fact that PGI listed an interest in the Note proceeds on its Bankruptcy Schedule B.[30]  Defendant replied that the assignment of the Note and Deed of Trust took place before PGI filed for bankruptcy based on evidence that they were assigned in December 2011.

Under Texas law, a transfer of a promissory note may be completed through indorsement or delivery of the note.  See In re Skelton, Bankr. No. 12-34350, Adversary No. 12-3184, 2013 WL 4009651, at *5 (Bankr. N.D. Tex. Aug. 5, 2013)(unpublished).  An indorsement is a signature that is made for the purpose of negotiating the promissory note.  Tex. Bus. & Com. Code § 3.204(a).  Negotiation is the transfer of possession of a note whereby the transferee becomes the holder of the note.  Tex. Bus. & Com. Code

---

[30]   See Doc. 71-39, Ex. 39 to Pl.'s Resp., PGI's Schedule B p. 5.

§ 3.201. If a transfer of a note is done by delivery, rather than indorsement, then the promissory note "is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument," and transfer "vests in the transferee any right of the transferor to enforce the instrument." Tex. Bus. & Com. Code § 3.203(a), (b).

The evidence provided by Defendant in his reply demonstrates that the Note was indorsed by Defendant on behalf of PGI on December 1, 2011, thus making Nikko Development the holder of the Note. Also, both the Note and Deed of Trust were assigned and delivered to Dr. Nikko's counsel in December, a few months before PGI filed for bankruptcy. Plaintiff's argument that PGI was still the holder of the note because it was listed on its Schedule B is factually inaccurate because PGI was no longer the holder of the Note upon its indorsement, and the asset listed was the receivable from the settlement of the Note. Therefore, the Note was no longer property of the PGI bankruptcy estate at the time of PGI's bankruptcy filing. Plaintiff has not met his burden to show that the Note and Deed of Trust were transferred post-petition. The court finds that summary judgement should be granted on Plaintiff's claims under 11 U.S.C. §§ 542 and 549 of the Bankruptcy Code.

B. **Breach of Fiduciary Duty**

Under Texas law, the elements of breach of fiduciary duty are:

(1) a fiduciary relationship between the plaintiff and defendant; (2) a breach by the defendant of his fiduciary duty to the plaintiff; and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach to the plaintiff. Lundy v. Masson, 260 S.W.3d 482, 501 (Tex. App.–Hous. [14th Dist.] 2008, no pet.)(citations omitted). Officers and directors of corporations owe a fiduciary duty to the corporation. Int'l Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 576 (Tex. 1963); see also Somers ex rel. EGL, Inc. v. Crane, 295 S.W.3d 5, 10 (Tex. App.–Hous. [1st Dist.] 2009 pets. denied). An officer or director's fiduciary duty to the corporation consists of the duties of loyalty, obedience, and care. Gearhart Indus., Inc. v. Smith Int'l, Inc., 741 F.2d 707, 719 (5th Cir. 1984)(applying Texas law).

In Weaver v. Kellogg, 216 B.R. 563, 583 (S.D. Tex. 1997), the court held that, under Texas law, "corporate insiders . . . may have a fiduciary duty to the corporation's creditors even when the corporation [is] not insolvent." The "corporate insiders" to which Weaver referred were two sole shareholders and directors of the corporation. Id. at 581-84. The court held that "Plaintiff may therefore prevail on his breach of corporate duty claims if he shows, for each allegedly wrongful transaction, that [the corporation] was, at the time, in the 'vicinity of insolvency'; that the transaction led to [the corporation's] insolvency; or that the transaction was a fraudulent conveyance." Id. at 584. The court

11

found that it could not decide, at the summary judgment stage, the issue of whether the defendants had breached their fiduciary duties because the above listed fact issues had not been resolved.

Defendant contends that he did not breach his fiduciary duty to PGI and its creditors because the settlement agreement was in their best interests. Plaintiff responds that Defendant breached his fiduciary duty by negotiating the settlement agreement to give himself a portion of the proceeds from the sale of the property, rather than PGI.

Here, there is no dispute that Defendant owed a fiduciary duty to PGI.[31] Defendant was the sole shareholder of PGI, a company that was having major financial issues as early as 2010. PGI was, therefore, in the "vicinity of insolvency" at the time the settlement agreement was executed in December 2011, only a few months before PGI filed for bankruptcy.

Looking to Weaver, it is beyond debate that Defendant, as the sole shareholder and officer of PGI also owed a fiduciary duty to PGI's creditors. 216 B.R. at 583. Defendant gave up PGI's interest in the Note and Deed of Trust, and he negotiated a settlement agreement where he kept a portion of the sale proceeds for himself, a non-party to the underlying transaction. Therefore, Defendant has failed to show that he did not breach his fiduciary duty to PGI as

---

[31] See Doc. 67, Def.'s Mot. for Summ. J. pp. 7-8 (arguing that the settlement agreement was in the best interests of PGI and its creditors, not that Defendant did not owe a fiduciary duty to PGI and its creditors); Doc. 71, Pl.'s Resp. pp. 12-17.

a matter of law. The court finds that a genuine issue of material fact exists whether Defendant breached his fiduciary duties to PGI, precluding summary judgment on Plaintiff's claim.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion be **GRANTED IN PART** and **DENIED IN PART**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 30th day of January, 2017.

_____
U.S. MAGISTRATE JUDGE